**UNITED STATES of America**

v.

**Wilma Harrison DAVIS.**

**No. CRG 69126.**

United States District Court,
N. D. Mississippi,
Greenville Division.

July 3, 1970.

her under 26 U.S.C. § 5841 in violation of 26 U.S.C. § 5861(d); (2) possession of a sawed-off shotgun in violation of the same sections; (3) possession of a submachine gun after having been convicted of a felony in violation of 18 U.S.C. App. § 1202(a) (1); (4) possession of a sawed-off shotgun in violation of the same section. Following a plea of not guilty, her attorneys moved the court to suppress certain evidence against her and to dismiss the indictment on the ground that it failed to state an offense and that the federal statutes under which she was charged compelled her to incriminate herself in violation of her Fifth Amendment rights.

An evidentiary hearing was held on defendant's motions, at which time the court orally denied the motion to suppress and took under advisement the motion to dismiss the indictment.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Richard J. Hopkins, Washington, D. C., Fred L. Banks, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Defendant Wilma Harrison Davis was indicted on four counts: (1) possession of a submachine gun not registered to

I.

Defendant's claim of self-incrimination, as counsels' briefs reveal, goes to Counts 1 and 2 of the indictment, which charge violations of 26 U.S.C. § 5861 (d),[1] by her possession of firearms not registered to her as required by 26 U.S. C. § 5841[2]. These two statutes are part of the new National Firearms Act, and replace the former statutes, 26 U.S.C. § 5841 and § 5851, which were declared un-

---

1. "§ 5861. *Prohibited acts*
It shall be unlawful for any person—
  \*   \*   \*   \*   \*
(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; \* \* \*."

2. "§ 5841. *Registration of firearms*
  *(a) Central registry.*—The Secretary or his delegate shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record. The registry shall include—
    (1) identification of the firearm;
    (2) date of registration; and
    (3) identification and address of person entitled to possession of the firearm.
  *(b) By whom registered.*—Each manu-

facturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor.
  *(c) How registered.*—Each manufacturer shall notify the Secretary or his delegate of the manufacture of a firearm in such manner as may by regulations be prescribed and such notification shall effect the registration of the firearm required by this section. Each importer, maker, and transferor of a firearm shall, prior to importing, making, or transferring a firearm, obtain authorization in such manner as required by this chapter or regulations issued thereunder to import, make, or transfer the firearm, and such authorization shall effect the registration of the firearm required by this section." (Emphasis added.)

constitutional by the Supreme Court in *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), to the extent that Fifth Amendment privilege against self-incrimination was a full defense to one's being prosecuted either for failure to register a firearm under former § 5841 or for the possession of an unregistered firearm under former § 5851. Defendant charges that the new sections have failed to cure the constitutional infirmities of the old. The government responds that the new sections do not compel self-incrimination because: (1) new § 5848 forbids the use of any registration information as evidence in any prosecution prior to or concurrent with the filing of registration application, and (2) the class of persons who must register is now much larger, and therefore its members are not branded as "inherently suspect" since the new registration requirements apply to persons who acquire firearms by transfer, importation or making, which the former section did not. Compare former 26 U.S.C. § 5841,[3] with new 26 U.S.C. §§ 5812, 5822, and 5844.

So far as we know, the Supreme Court has not yet construed the new sections here challenged, nor has the Fifth Circuit Court of Appeals ever critically reviewed the precise point now raised, although it has recently affirmed a conviction under new § 5861 in a case where defense counsel conceded "the amendment of the statute eliminates the defect found by the Supreme Court in the prior statute in *Haynes.*" *United States v. Campbell,* 427 F.2d 892, June 15, 1970.

██ There is authority for the view that since the new National Firearms Act applies not only to a limited group of persons "inherently suspect of criminal activities" but requires a large number of persons legally possessing weapons to register, it is constitutional. *U. S. v. Cobb,* W.D.Tenn., No.Cr. 69–19, unreported opinion dated October 1, 1969. While the class of persons required to register firearms has been greatly expanded by the new Act, we doubt that this characteristic alone would save it from constitutional condemnation if the persons, however numerous, were required to incriminate themselves by their own acts.

Therefore, we examine the more fundamental aspects of the new statutes to ascertain whether there is any duty imposed upon the mere possessor of a firearm, as defined by the Act, to register it or a penalty prescribed for his failure to do so. Several sections of the new law lead us to the conclusion that no such duty is imposed. In the first place, by § 207(b), Pub.Law 90–618, 82 Stat. 1213, a person possessing an unregistered firearm prior to the passage of the Act could register it to himself without incrimination during a 30-day amnesty period beginning November 2 and ending December 1, 1968. Thereafter, the Act contains no provision which requires a mere possessor of a firearm to register it. Next, by § 5861(d), under which Wilma Harrison Davis has been indicted, it is unlawful for one "to receive or possess a firearm which is not *registered to him* in the National Firearms Registration and Transfer Record." That particular record, which is maintained as a central registry for all firearms in the United States not under control of the government, is provided for by new § 5841. For our present purposes, the critical portion of § 5841, headed "Registration of Firearms", is subsection (b),

3. § 5841. *Registration of persons in general*

"Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with."

which clearly prescribes *by whom* the registration must be made. The manufacturer, importer, maker nor transferor, arm is required to register each firearm manufactured, imported, or made by him; and the transferor of a firearm is required to register each firearm to the transferee. Thus, the current possessor of a firearm, who is neither manufacturer, importer, maker nor transferor is not required to incriminate himself, or indeed to do anything. Neither the new statutes nor any Treasury regulations cited to us make any provision whatsoever for a transferee-possessor of a firearm to effect registration in his own name. Under these conditions, there is no necessity to consider the relationship, or interplay, between § 5841 and § 5812 requiring registration by a transferor, § 5822 requiring registration by a maker, or § 5844 requiring an importer to show permitted use for firearm importation. Wilma Harrison Davis is indicted in Counts 1 and 2 only for a violation of § 5861(d) for possessing a firearm not registered to her at the Central Registry, and we are not concerned with the other subsections of § 5861 which, among other things, charge separate crimes for possessing a firearm *transferred, made* or *imported* in violation of law, or for *transferring, making,* or *importing* a firearm in violation of law.

A case directly in point is United States v. Schutzler, 309 F.Supp. 681 (S.D.Ohio 1969), where Chief Judge Weinman, upon more detailed analysis of the new statutes, upheld an indictment under § 5861(d), overruling a claim that it violated the constitutional privilege against self-incrimination. We adopt the reasoning of that case here. Analogous decisions have been presented in at least two post-*Haynes* decisions of the Fifth Circuit, which held that similar portions of the former statutes did not violate the self-incrimination privilege. For example, in Burton v. United States, 414 F.2d 261 (5 Cir. 1969) a defendant was held to be validly convicted under old § 5851 for possession of a sawed-off shotgun "made in violation of" former § 5821, and the Court pointed out that the accused was not charged with failure to register the gun, but only with possessing an illegally made firearm. Said the court:

> "Under the statute, the possessor of such a firearm may not correct the maker's failure to have disclosed an intention to make such a firearm. Self-incrimination is not required under Section 5851 in its interplay with Section 5821 since it does not compel a possessor to register or otherwise incriminate himself."

Circuit Judge Jones, in writing for the court, quoted with approval the following language of a similar decision by the Eighth Circuit:

> "In this setting, the defendant's invocation of his privilege against self-incrimination is not well taken, since his offense derived not from his own failure to comply with the making provisions but rather from his possession of the firearm illegally made by others. We do not believe the Supreme Court intended that its holding in *Haynes* should be applied to a situation where, as here, the defendant was under no statutory command to and did not in fact supply any self-incriminating information." [4]

In Marshall v. United States, 422 F.2d 185 (5 Cir. 1970), the Court upheld Marshall's conviction under former § 5851 for possessing a firearm made in violation of former § 5821, notwithstanding a claim that his Fifth Amendment rights vouchsafed to him by *Haynes* had been violated. Following the *Burton* case and other decisions, Judge Goldberg, writing for the Court, held as follows:

> "Although the *maker* of the firearm is required by § 5821 to provide information about the firearm prior to its making, the *possessor* of the firearm after its making is not required to come forward and give information of any kind to anyone. Nei-

4. Reed v. United States, 401 F.2d 756, at 762–763 (8 Cir. 1968).

ther § 5851 nor § 5821 compels a *possessor* to incriminate himself in any manner."

Since there was no statutory duty imposed upon Wilma Harrison Davis to register the sawed-off shotgun and submachine gun in her possession, she cannot claim that under either § 5841 or § 5861(d) of the new National Firearms Act she was compelled to incriminate herself in any way, and therefore her challenge to Counts 1 and 2 must fail. We forego as unnecessary any discussion as to the effectiveness of new § 5848 to confer immunity against criminal prosecution upon any person who is required by the new statutes to file an application for registration of a firearm.

## II.

Turning to Counts 3 and 4, we consider defendant's argument that those counts, which are framed upon 18 U.S.C. App. § 1202(a) (1),[5] charge her with possessing a firearm after having been convicted of a felony, are defective because Congress has no constitutional power to create a federal offense out of mere intrastate possession of a firearm by a convicted felon, in contradistinction to his possessing, receiving, or transporting a firearm moving in foreign or interstate commerce. Defendant also asserts that a weapon which has been previously shipped in foreign or interstate commerce is no longer subject to control by Congress when it leaves the stream of commerce and passes into the general mass of property subject only to state jurisdiction.

The arguments made by defendant were clearly foreseen by Congress, as is revealed by 18 U.S.C. App. § 1201:

*"Congressional findings and declaration*

The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commence or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution."

The above congressional findings and declaration vividly demonstrate that Congress did not base § 1202 solely upon its power to control the flow of interstate commerce, but also upon its constitutional power to police all activity which might burden or adversely affect the flow of interstate commerce, as well as its constitutional authority to outlaw activities which might threaten the lives of the President and Vice President, the effective operation of the federal gov-

---

5. 18 App. § 1202(a) (1) provides as follows:
  "(a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, and who *receives, possesses, or transports*
*in commerce or affecting commerce*, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." (Emphasis added.)

**1166**

ernment, or the exercise of the people's rights of free speech and religion. The government now argues, and we agree, that Congress has full constitutional authority under the Commerce Clause (Art. I, § 8, Cl. 3, U.S. Constitution), and the Necessary and Proper Clause (Art. I, § 8 Cl. 18), to enact legislation making it a federal crime for a convicted felon to possess a firearm, whether it is moving or has ever moved in interstate commerce, because the mere possession of a firearm by such person, wholly intrastate, creates a serious threat to the free flow of interstate commerce. For that reason we hold that § 1202 is constitutional, and defendant's challenges thereto must fail.

Granting that Congress has the constitutional authority to enact a statute regulating the wholly intrastate possession of firearms by convicted felons, the question arises whether Congress did in fact enact such a statute in § 1202. The language raising the question is that clause which states that a convicted felon shall be in violation of § 1202 if he "receives, possesses, or transports (a firearm) *in commerce or affecting commerce.*" (Fn. 5, supra). The above emphasized language seems on its face to require that the receipt, possession or transportation of the firearm must be in commerce. A closer reading of the statute itself and related statutes, however, reveals that Congress did not intend possession *in commerce* to be a necessary element of the offense. We reach this conclusion for several reasons.

First of all the language of the statute is in the alternative; the offense is receiving, possessing or transporting "in commerce *or* affecting commerce", thus either type of possession would seem to violate the statute. Since § 1201 conclusively establishes that mere possession of a firearm by a convicted felon adversely affects commerce, there would be no reason to allege that it "affects commerce" in the indictment if that offense alone were charged, for the government would not be required to prove, nor the defendant able to disprove, that mere possession of a firearm by a convicted felon "affects commerce".

■ Yet another consideration convinces us that the words "in commerce or affecting commerce" are unnecessary to state an offense under § 1202. The provisions of 18 U.S.C. § 922,[6] which is part of the Omnibus Crime Control and Safe Streets Act of 1968 (Pub. L. 90–351, 82 Stat. 197), which was enacted into law well *before* § 1202, already provided that it was unlawful for any convicted felon to receive any firearm which had been transported in interstate commerce. With § 922 already in full force and effect, there was no reason for Congress to pass § 1202 to cover the receipt or transportation of a firearm by a convicted felon in interstate commerce. It is axiomatic that courts will not construe a legislative act to be without effect if some reasonable purpose may fairly be attributed to it. To hold that the purpose of § 1202 was to forbid the same offenses already proscribed by § 922 would be to impute lack of purpose to an Act of Congress, and to ignore the clearly expressed congressional declaration in § 1201, that its purpose in enacting § 1202 was to create a broader and more inclusive group of offenses than those stated in § 922.

■ Furthermore, the words "in commerce or affecting commerce" as they

---

6. 18 U.S.C. § 922(g) and (h) provide:
   "(g) It shall be unlawful for any person—
       (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; * *. to ship or transport any firearm or ammunition in interstate or foreign commerce.

   (h) It shall be unlawful for any person—
       (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; * * *. to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

appear in § 1202, are, in our opinion, mere surplusage, and they do not constitute an essential ingredient of the offenses created by that statute.[7] For this reason, we conclude that the omission of the words "in commerce" or "affecting commerce" from the indictment is without significance and does not invalidate Counts 3 and 4.

An order will be entered overruling defendant's motion to dismiss the indictment.

---

7. Counts 3 and 4 charge the defendant, Wilma Harrison Davis, with "being a person who had been convicted by the Circuit Court of Clay County, Mississippi, on or about the 14th day of July, 1967, of the crime of manslaughter, which violation being a felony, did possess a firearm * * * in violation of Title 18, App. § 1202(a) (1)."