**UNITED STATES of America,**
**Appellee,**

v.

**Denneth BASS, Defendant-Appellant.**

**No. 204, Docket 34640.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1970.

Decided Nov. 30, 1970.

Harry C. Batchelder, Jr., Gerald A. Feffer, New York City (Milton Adler, Legal Aid Society, New York City, on the brief), for appellant.

Bobby C. Lawyer, Asst.U.S.Atty. (Whitney North Seymour, Jr., U.S. Atty. S.D. N. Y., Thomas J. Fitzpatrick, Asst.U.S.Atty., on the brief), for appellee.

Before DANAHER,* FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York convicting appellant of two counts of possessing firearms in violation of 18 U.S.C. (Appendix) § 1202(a) (1) (Supp. V. 1970). Appellant was sentenced to fifteen months imprisonment on each of

---

* Senior Judge, Court of Appeals for the District of Columbia Circuit, sitting by designation.

the two counts, the terms to run concurrently.

The indictment in this case stems from an investigation by a United States treasury agent of suspected narcotics violations by appellant. Agent George Jordan, acting in an undercover capacity, met the appellant at his home in order to arrange a purchase of narcotics. Appellant directed Jordan to the basement where the purchase was made from an unknown person. The following day, the agent returned and purchased a quantity of narcotics directly from appellant. At this time, the agent observed that appellant was carrying a Baretta automatic pistol. Jordan obtained an arrest warrant for appellant and a search warrant for appellant's apartment. He then proceeded to the apartment and, after being admitted, observed a sawed-off shotgun on a night table. At this time, other agents knocked on the door and announced themselves; appellant fled and was apprehended at the rear door by a waiting agent. The subsequent search of the apartment produced the Baretta, which was under a bathtub.

The statute under which appellant was convicted provides:

"(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States,

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

18 U.S.C. (Appendix) § 1202(a) (Supp. V. 1970).

It was stipulated at trial that defendant had been previously convicted of the felony of attempted grand larceny in the second degree, so as to place him within the scope of the statute. At trial, appellant did not deny ownership of either the apartment or the weapons. His contention here is that as the government did not specifically allege and prove that the possession of the firearm was "in commerce or affecting commerce," the statutory requirements for conviction have not been fulfilled. Alternatively, defendant argues that should the statute be interpreted to allow conviction for possession of a firearm without proof of some connection with interstate commerce, it would be unconstitutional. Since we agree with the first contention and also with the second to the extent of believing that the government's construction would create serious constitutional doubts, we reverse appellant's conviction.

### I.

The controversy over the proper interpretation of the statute involves the question of whether the phrase "in commerce or affecting commerce" modifies "transports" alone or whether it also applies to receipt and possession. This question has plagued several district courts, with conflicting results.[1] In the only Court of Appeals decision interpreting the statute, United States v. Daniels, 431 F.2d 697 (9th Cir. 1970), the Ninth

---

1. United States v. Harbin, 313 F.Supp. 50 (N.D.Ind.1970); United States v. Francis, Cr.No.12,684 (E.D.Tenn., Dec. 12, 1969); United States v. Phelps, Cr.No.14,465 (M.D.Tenn., Feb. 10, 1970);

United States v. Davis, No. ORG 69126-K (N.D.Miss., July 2, 1970); United States v. Vicary, Cr.No.44205 (E.D.Mich., June 29, 1970).

Circuit affirmed the conviction, simply citing the opinion of the district court in the instant case, 308 F.Supp. 1385 (S.D.N.Y.1970). At least part of the confusion can be attributed to a most unedifying and inadequate legislative history. Sections 1201 and 1202 of Title 18 U.S.C. (Appendix) were enacted as part of the Omnibus Crime Control and Safe Streets Act. After extended debate on numerous controversial issues, these two sections, known collectively as Title VII, were introduced on the floor by Senator Long. He twice set forth the purpose of the Amendment. 114 Cong.Rec. 13,867–69, 14,722–75, 90th Cong., 2d Sess. (1968). After his second speech, there was some brief debate; the few thoughts that were expressed seemed to favor the amendment in principle, but there appeared to be a desire for further study. Unexpectedly, however, a vote was called for, and Title VII passed with no further discussion, and no amendment.

Absent meaningful legislative history as to whether proof of some connection with interstate commerce was intended to be a prerequisite for prosecution for receipt and possession as well as transportation, the government relies on "one of the simplest canons of statutory construction," United States ex rel. Santarelli v. Hughes, 116 F.2d 613, 616 (3rd Cir. 1940), that is, that a limiting clause is deemed to apply solely to its last antecedent unless the subject matter requires a different construction. See FTC v. Mandel Brothers Inc., 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959). The word "transports," the government argues, is the only word modified by the commerce requirement, a conclusion which the government further supports by citing the arrangement of the commas. The argument, though it may be technically precise, leads to an illogical conclusion. Interpreting the commerce requirement to modify only the "transports" clause means that, although intrastate receipt and possession are punishable under the statute, intrastate transportation is not. Moreover if both "receipt" and "possession" are punishable without regard to the interstate elements, the modifying clause is meaningless, since there can scarely be "transportation," whether intrastate or interstate, without an accompanying receipt or possession. Thus, in order to argue that a commerce requirement is not imposed by the statute on "receipt" or "possession," the government is forced to take the position that the commerce requirement of the statute is either totally illogical or mere surplusage.

It is considerably more probable that the commerce language was inserted to avoid questions of the scope of Congressional power and to mirror the approach to federal criminal jurisdiction reflected in many other federal statutes. See, e. g., 18 U.S.C. § 1951 (1964) (obstructing or affecting interstate commerce or movements of commodities in commerce by robbery or extortion); 18 U.S.C. § 875 (1964) (transmitting kidnapping or extortion threats by means of interstate commerce); 18 U.S.C. § 2421 (1964) (transporting women in interstate commerce for prostitution).

The government also attempts to supports its reading of the statute by reference to Section 1201, which provides:

"The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship constitutes— .

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government

of the United States and of the government of each State guaranteed by article IV of the Constitution."

This provision was part of the original proposal offered by Senator Long on the floor of the Senate and accepted with no substantial discussion. 114 Cong.Rec. 13,867, 90th Cong., 2d Sess. (1968).

This section lists four separate threats posed by the receipt, possession or transportation of firearms, only one of which deals with burdens on interstate commerce. From this the government reasons that there was no intent to impose a commerce requirement. Although these "findings" may be designed to provide additional constitutional bases for the legislation, a matter which we shall deal with shortly, the incorporation of the commerce language into both Sections 1201 and 1202 indicates the fallacy of the contention that as a matter of statutory interpretation the other "findings" can support a conviction without proof of a commerce connection. Once again, the government is left with the position that the language employed in Section 1202 is mere surplusage, a contention that is as unsatisfactory here as it was in the context of the government's grammatical argument.

## II.

One further factor compels us to interpret the statute as requiring a showing that receipt or possession must be in or affecting interstate commerce. Although grammatical statutory maxims have proved inadequate in this case, there remains the cardinal principle of both statutory construction and constitutional law requiring the interpretation of statutes, if possible,[2] to avoid a reading which would create serious constitutional doubts. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56

S.Ct. 466, 80 L.Ed. 688 (1936) (Justice Brandeis concurring); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L. Ed. 598 (1932); Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L.Ed. 851 (1929); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303 (1928); Blodgett v. Holden, 275 U.S. 142, 148, 48 S.Ct. 105, 75 L.Ed. 206 (1927). A situation in which, as here, an interpretation not entailing constitutional doubts can be reached independently, provides a particularly appropriate occasion for the application of the principle. See, e. g., Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

There is serious doubt in the present case whether the statute, if given the interpretation for which the government contends, could withstand constitutional scrutiny. To establish constitutionality the government relies upon such cases as Maryland v. Wirtz, 392 U.S. 183, 88 S. Ct. 2017, 20 L.Ed.2d 1020 (1968); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L. Ed.2d 258 (1964); Katzenbach v. Mc-Clung, 379 U.S. 294, 85 S.Ct. 377, 13 L. Ed.2d 290 (1964); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Darby, 312 U. S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). In each of these cases there is something more than the mere bald assertion that a particular activity is a burden on interstate commerce. For example, the statute involved in Heart of Atlanta Motel v. United States, *supra,* was carefully circumscribed to apply only to establishments providing lodging to transient guests, an activity which it was said, affects interstate commerce per se. In Katzenbach v. McClung, *supra,* only restaurants which served food, a substantial amount of which moved in commerce, or which served or offered to serve interstate travelers, were subject to the statute. In Maryland v. Wirtz,

---

2. Resort to this principle of statutory construction in this case does not lead to "distortions of statutes and manipulations of narrow constitutional doctrines." Gun-

ther, The Subtle Vices of the "Passive Virtues"—A Comment on Principle and Expediency in Judicial Review, 64 Colum. L.Rev. 1, 21 (1964).

*supra*, the only enterprises employees of which were covered by the statute were those which engaged in commerce or in production of goods for commerce.

White v. United States, 395 F.2d 5 (1st Cir.), cert. denied, 393 U.S. 928, 89 S.Ct. 260, 21 L.Ed.2d 266 (1968), relied on so heavily by the government, is factually distinct, even if we were inclined to accept its holding for purposes of determining this case. In the first place, Congress, in enacting the 1965 amendments to the Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C. §§ 301–392 made findings based not on conjecture but on committee hearings. White v. United States, *supra*, 395 F.2d at 6. More importantly, the court itself recognized the distinct problems inherent in the field of drug regulation:

"Unlike many other objects of federal regulation, depressant and stimulant drugs are not an inert, passive substance, which, after use, pass into the realm of statistics of consumption. They exert an influence on the consumer, which may spell danger or disaster for people or property from or in other states. As for distribution, Congress has acknowledged that attempts prior to 1965 to regulate proscribed interstate traffic have failed because of the impracticality and impossibility of determining source of origin identification." 395 F.2d at 7.

Even in United States v. Perez, 426 F.2d 1073 (2d Cir. 1970), there was at least some evidence that Congress probed the commerce clause basis of the statute and made substantial findings. 426 F.2d at 1078–1080 and nn. 3–5. This may all be contrasted with the findings in this case, if indeed they may be so characterized. All that is present in the "debates" is statements by the bill's author based on nothing but conjecture and a series of inferences which, if accepted, would support federal legislation concerning almost any criminal matter. 114 Cong.Rec., *supra*.

An interpretation of the statute that would allow prosecution for receipt or possession of firearms without a showing in each case that such receipt or possession was in or affecting interstate commerce would be an unprecedented extension of federal power. "There is no Supreme Court case which suggests that Congress can ignore the requirement that some connection with interstate commerce must be established as a basis for conviction of a federal crime where the power of Congress to enact the statute is derived from the commerce clause." See discussion of United States v. Denmark, 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179 (1953) in United States v. Perez, *supra*, 426 F.2d at 1082–1083 (dissenting opinion).

Reliance on the "findings" in section 1201 will not suffice to avoid the constitutional difficulties. It should first be pointed out that the inclusion of the commerce finding, alone, in the body of section 1202 suggests that Congress as a whole regarded the commerce clause as the source of its authority in this matter. In any case, the three alternative "findings," like the "burden on commerce" finding, are nothing more than assertions that a constitutional basis for such legislation exists. It is simply not enough, however, to proclaim that receipt or possession of firearms impedes, for example, free speech; it might just as well be argued that burglary of a house of worship impedes religious freedom and that therefore, a federal offense can be fashioned. Surely we have a right to expect that were such a departure from basic principles of federalism in the area of criminal law intended, particularly on such novel and esoteric theories, more consideration would have been given to the statute before its enactment.

Thus, the only rational interpretation of the statute, and the only interpretation of the statute that can avoid otherwise serious constitutional doubts is that which requires that receipt and possession, as well as transportation, be shown,

in each case, to have been "in commerce or affecting commerce."[3] Since such a showing was not made by the government in this case, appellant's conviction cannot stand.

Because of the result we have reached, there is no need to discuss appellant's further contention that the definition of "felony" in § 1202(c) (2) denies him the equal protection of the laws.

Reversed.

---

3. Compare Haynes v. United States, 390 U.S. 85, 88, 98, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), where it is made apparent that the National Firearms Act was predicated upon an exercise of Congressional power in the field of taxation.