**UNITED STATES of America,
Appellee,**

v.

**Dale Einar SYNNES, Appellant.**

**No. 20438.**

United States Court of Appeals,
Eighth Circuit.

Feb. 1, 1971.

John W. Harrigan, Minneapolis, Minn., for appellant.

Robert G. Renner, U. S. Atty., Peter J. Thompson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MEHAFFY and HEANEY, Circuit Judges, and MEREDITH, District Judge.

HEANEY, Circuit Judge.

This appeal, along with United States v. Wiley, 438 F.2d 773 (8th Cir. 1971), and United States v. Taylor, 438 F.2d 774 (8th Cir. 1971), also decided today, presents to our Court for the first time the issues of the proper construction and the constitutionality of § 1202 (a) (1) of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 197. This section provides:

"Any person who—

"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony * * *

"and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

We affirm the judgment of conviction in each case.

We select *Synnes* as the case for a detailed opinion because it raises a double jeopardy issue not presented in *Wiley* or *Taylor.*

Defendant, Dale Einar Synnes, was charged with violation of § 1202(a) (1) by a federal grand jury on January 17, 1970. He waived trial by jury, and was tried in the United States District Court for the District of Minnesota. Two Minneapolis police officers testified that they arrested the defendant on August 15, 1969, and that he was in possession of a .38 caliber Smith & Wesson pistol at the time of his arrest. Records showing that the defendant had a prior felony conviction in the State of Minnesota were received in evidence.

The defendant presented no witnesses. Both sides stipulated that the defendant had previously been convicted under a Minneapolis city ordinance for being in possession of a firearm while a convicted felon, and that the prior conviction was based on the same evidence as that presented in the case being tried. The defendant was found guilty and sentenced to imprisonment for one year.

In each of the three cases under consideration, the government takes the position that it is necessary to show only (1) the knowing and willing (2) possession of a firearm (3) by a previously convicted felon. The defendants argue that these elements are insufficient to support a conviction, for two reasons:

(1) the statute specifically requires that the receipt, possession or transportation be in or affecting interstate commerce; and

(2) if the statute is not so interpreted, it is unconstitutional as an invalid exercise of power by Congress under the Commerce Clause.

The Courts of Appeals are in conflict on the question whether it is necessary to show a specific connection between interstate commerce and the particular act of receipt, possession or transportation being charged. The Fourth and Ninth Circuits have both held, in per curiam opinions, that the government need not prove that the firearm possessed by a defendant was in commerce or that his possession of it affected commerce. They further held the statute to be a valid exercise of congressional power. United States v. Cabbler, 429 F.2d 577 (4th Cir.), cert. denied, 400 U.S. 901, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); United States v. Daniels, 431 F.2d 697 (9th Cir. 1970). However, the Second Circuit, in United States v. Bass, 434 F.2d 1296 (1970), held that to avoid serious constitutional problems, § 1202(a) should be interpreted to include a requirement that receipt and possession, as well as transportation, be shown in each case to have been "in commerce or affecting commerce." [1]

1. The United States District Courts are also split. The following decisions have upheld the validity of the government's construction of § 1202(a) (1); United States v. Davis, 314 F.Supp. 1161 (N.D. Miss.1970); United States v. Wiley, 309 F.Supp. 141 (D.Minn.1970); United States v. Bass, 308 F.Supp. 1385 (S.D.

Since the construction of statutes depends to some extent upon the constitutional options available,[2] we turn first to the problem of determining whether Congress is empowered to prohibit mere receipt or possession of a firearm by a felon.

The Commerce Clause of the Constitution, Art. I, § 8, cl. 3, combined with the Necessary and Proper Clause, Art. I, § 8, cl. 18, gives to Congress the power to regulate both interstate commerce and any intrastate activity which " * * * exerts a substantial economic effect on interstate commerce * * *." Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942). See also, Katzenback v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed. 290 (1964); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). As Justice Black stated in his concurring opinion in *Heart of Atlanta Motel*:

> " * * * [T]his Court has steadfastly followed, and indeed has emphasized time and time again, that Congress has ample power to protect interstate commerce from activities adversely and injuriously affecting it, *which but for this adverse effect on interstate commerce would be beyond the power of Congress to regulate.*"

379 U.S. at 272, 85 S.Ct. at 365 (Emphasis added.).

In determining whether the legislation in question is within the limits set out above, we examine: (1) whether Congress had a rational basis for finding that receipt or possession of a firearm by a convicted felon affects commerce, and (2) if it had such a basis, whether the means it selected to protect commerce are reasonable and appropriate. See, Heart of Atlanta Motel, Inc. v. United States, *supra* at 258–259, 85 S.Ct. 348; White v. United States, 399 F.2d 813, 823 (8th Cir. 1968).

The Second Circuit in United States v. Bass, *supra,* found the statute so lacking in specific legislative history and findings as to make it impossible to say that Congress had a rational basis for finding that receipt or possession of a firearm by a convicted felon affects interstate commerce. We disagree.

It is clear that Congress relied to some extent on the Commerce Clause for authority in promulgating § 1202.[3] The introductory section to the statutory scheme, § 1201, states:

> "The Congress hereby finds and declares that the receipt, possession or transportation of a firearm by felons * * * constitutes—
>
> "(1) a burden on commerce or threat affecting the free flow of commerce, * * * *"

While no extensive debate or hearings were held in relation to the statute, we think it clear that Congress had before it sufficient data from which it could determine that the required nexus existed between interstate commerce and possession of a firearm by a convicted felon.[4] For example, *The Challenge of*

---

N.Y.1970), rev'd, 434 F.2d 1296 (2nd Cir. 1970) (but followed in United States v. Daniels, 431 F.2d 697 (9th Cir. 1970)); United States v. Vicary, No. 44,205 (E.D. Mich. June 29, 1970) (en banc); United States v. Childress, No. 8039–R (E.D.Va., Jan. 6, 1969).

However, construction given by the Second Circuit in *Bass* has been supported by: United States v. Harbin, 313 F.Supp. 50 (N.D.Ind.1970); United States v. Steed, No. Cr. 70–57 (W.D. Tenn., May 11, 1970); United States v. Phelps, No. 14,465 (M.D.Tenn., Feb. 10, 1970); United States v. Francis, No. 12,684 (E.D.Tenn., Dec. 18, 1969).

2. See *e. g.,* Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Blodgett v. Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927); United States v. Bass, *supra.*

3. Since we find the necessary congressional authority under the Commerce Clause, we need not consider the other possible sources of power suggested by § 1201. See, *e. g.,* United States v. Bass, 308 F. Supp. 1385, 1387–1388 (S.D.N.Y.1970).

4. The fact that this material was considered by the 90th Congress is made clear

*Crime in a Free Society*, a report by the President's Commission on Law Enforcement and Administration of Justice, published in February, 1967, estimated the economic cost of homicide at $750,000,000 per year; of robbery, burglary, larceny and auto theft at over $600,000,000 annually. Yearly private and public expenditures for crime prevention, detection and correction were estimated to exceed $6,000,000,000. Without question, these appalling costs substantially burden interstate commerce. The Report went on to indicate that in 1965, 5,600 murders, 34,700 aggravated assaults and the vast majority of the 68,400 armed robberies were committed by means of firearms. It is self-evident that such widespread, firearm-related crime does have a substantial impact on interstate commerce. Finally, the Report indicates the special danger represented by a convicted felon:

> "The most striking fact about offenders who have been convicted of the common serious crimes of violence and theft is how often many of them continue committing crimes."

*The Challenge of Crime in a Free Society*, *supra* at 45.

Data available subsequent to the passage of § 1202 reaffirm the nexus between interstate commerce and possession of a firearm by a felon. J. Edgar Hoover, in *Crime in the United States* (1969), indicates that nearly seventy-five percent of all persons arrested for robbery have prior criminal convictions. *Firearms and Violence in American Life* (1969), a staff report to the National Commission on the Causes and Prevention of Violence, states that "Robbery is a crime made infinitely more possible by having a gun." The same report indicates that an assault with a firearm is five times as likely to be fatal as one with a knife.

While these data may not be as precise or particular as might be desired, we find it impossible to say that Congress

had no rational basis for finding that receipt or possession of a firearm by a convicted felon affects commerce.

Having found a rational nexus between the regulated activity and interstate commerce, we cannot say that the proscriptions of § 1202(a) (1) are unreasonable or inappropriate means for eliminating the evil perceived by Congress. Again, our viewpoint must be relative rather than absolute; the exercise of congressional power need not coincide with what we believe to be the optimum choice of available alternatives. It need only be reasonable and appropriate. Heart of Atlanta, Motel, Inc. v. United States, *supra*; United States v. Perez, 426 F.2d 1073 (2nd Cir.), cert. granted, 400 U.S. 915, 91 S.Ct. 175, 27 L.Ed.2d 154 (1970). Therefore, while licensing or registration systems or a more limited prohibition may also pass constitutional muster, we find it both reasonable and appropriate for Congress to prohibit convicted felons from possessing or receiving firearms.

■ It must be conceded that Congress' regulatory power under the Commerce Clause has been construed liberally, and expanded to meet the needs of our increasingly complex society. Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); Katzenbach v. McClung, *supra*; Heart of Atlanta Motel, Inc. v. United States, *supra*; Wickard v. Filburn, *supra*; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed.2d 609 (1941). Various Circuit Courts have recently upheld the constitutionality of statutes which prohibit, without requiring the prosecution to prove a connection with interstate commerce, the use of extortionate means to collect or attempt to collect extensions of credit (18 U.S.C. §§ 891, 894), United States v. Perez, *supra*; and which generally prohibit the manufacture, processing, sale or possession of any depressant or stimulant drug (21 U.S.C. §§ 331(g), 360(a)), United States v. Cerrito, 413

by the general legislative history to the Omnibus Crime Control and Safe Streets

Act of 1968. See, generally, 2 U.S.C.C. A.N.1968, pp. 2112–2309.

F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed. 2d 495 (1970); White v. United States, *supra*; Deyo v. United States, 396 F.2d 595 (9th Cir. 1968); White v. United States, 395 F.2d 5 (1st Cir.), cert. denied, 393 U.S. 928, 89 S.Ct. 260, 21 L.Ed. 2d 266 (1968). We do not think that a statute prohibiting the mere possession or receipt of firearms by convicted felons represents a significant departure from established limits of congressional authority granted by the Commerce Clause.

■ Having determined that Congress does have the power to prohibit possession and receipt of firearms by convicted felons without a specific showing of relationship to interstate commerce, we must now decide whether 18 U.S.C. App. § 1202(a) (1) is an exercise of that authority. The statute is not without ambiguity. Section 1201 sets out the congressional findings and declaration. It states that

"The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons * * * constitutes—

"(1) a burden on commerce or threat affecting the free flow of commerce * * * "

and then continues to list further dangers posed by such receipt, possession or transportation.[5] Section 1202(a) (1) subjects any person " * * * convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * * and *who receives, possesses, or transports in commerce or affecting commerce*, * * * any firearm * * * " to criminal penalties. (Emphasis added.) Finally, § 1202(c) (1) defines "commerce" as used in this title as interstate commerce.

Defendants argue that the phrase "in commerce or affecting commerce" in § 1202(a) modifies all the preceding words "receives, possesses or transports," thus making specific proof of activity affecting interstate commerce an element of any offense charged under § 1202. The government on the other hand argues that only where the offense charged involves transporting firearms is it necessary to show that the act was "in commerce or affecting commerce." Both sides advance grammatical analyses supporting their positions. We find them equally unconvincing. See, *e. g.*, United States v. Bass, 434 F.2d 1296 (2nd Cir. 1970); United States v. Harbin, 313 F.Supp. 50 (N.D.Ind.1970); United States v. Wiley, 309 F.Supp. 141 (D. Minn.1970); United States v. Bass, 308 F.Supp. 1385 (S.D.N.Y.1970), rev'd 434 F.2d 1296. (2nd Cir. 1970).

In our view, Congress did not intend proof that the receipt or possession charged under § 1202(a) occurred "in commerce or affecting commerce" to be an element of the offense. First, a close reading of the congressional findings and declarations expressed in § 1201 and the legislative history, albeit sketchy, leaves us strongly convinced that Congress was attempting to reach and prohibit all possession of firearms by felons. Section 1201 declares that the " * * * receipt, possession, or transportation of a firearm by felons * * * constitutes * * * " a burden on or threat to interstate commerce and several other areas within the proper sphere of congressional concern and legislation. The declaration seems to clearly indicate that possession, whether intrastate or interstate, affects interstate commerce. Further, it is unreasonable to suggest that the areas of congressional concern are any less

---

5. In addition to burdening interstate commerce, § 1201 finds the following adverse effects to flow from possession of firearms by felons:

"(2) a threat to the safety of the President of the United States and Vice President of the United States,

"(3) an impediment or a threat to the exercise of free speech and the free

exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

"(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution."

threatened by intrastate possession than by interstate possession.

The legislative history reinforces our view. Sections 1201 to 1203 were introduced as an amendment to the Omnibus Crime Control and Safe Streets Act, by Senator Russell Long, and were finally passed as Title VII of that Act, Pub.L. No. 90–351, 82 Stat. 197. While other sections and amendments to the Act were the subject of extensive debate and discussion, Title VII passed uneventfully after an unexpected call for a vote. The history consists almost exclusively of explanatory comments by Senator Long. While the point considered here is not explicitly answered, we think a fair reading of the Senator's remarks compels our construction:

> " * * * Congress simply finds that the possession of these weapons by the wrong kind of people is either a burden on commerce or a threat that affects the free flow of commerce.
>
> "You cannot do business in an area, and you certainly cannot do as much of it and do it as well as you like, if in order to do business you have to go through a street where there are burglars, murderers, and arsonists armed to the teeth against innocent citizens. So the threat certainly affects the free flow of commerce."

114 Cong.Rec. 13,869 (1968).

> "What the amendment seeks to do is to make it unlawful for a firearm—be it a handgun, a machinegun, a long-range rifle, or any kind of firearm—to be in the possession of a convicted felon who has not been pardoned and who has therefore lost his right to possess firearms. * * * It also relates to the transportation of firearms.
>
> \* \* \* \* \* \*
>
> "Clauses 1–5 [Clause 1 described convicted felons] describe persons who, by their actions, have demonstrated that they are dangerous, or that they may become dangerous. Stated simply, they may not be trusted to possess a firearm without becoming a threat to

society. This title would apply both to hand guns and to long guns.

\* \* \* \* \* \*

> "It has been said that Congress lacks the power to outlaw mere possession of weapons. * * *
>
> \* \* \* \* \* \*
>
> "Without question, the Federal Government does have power to control possession of weapons where such possession could become a threat to interstate commerce * * *.
>
> \* \* \* \* \* \*
>
> "The vast reach of the Federal power to control matters affecting interstate commerce, once thought to be beyond Federal legislation, has been demonstrated by the broad swath of the Civil Rights Act of 1964 and by the still broader scope of the 1968 civil rights legislation. No one can argue that Martin Luther King's murder did not affect commerce. Look at our cities and how stores and business (sic) engaged in interstate commerce were burned, looted and pillaged by rioting mobs protesting his death."

114 Cong.Rec. 14,773–14,775.

The use of the commerce language in these statements clearly goes to *why* Congress can prohibit all possession of firearms by felons, not to the *type* of possession prohibited.

Secondly, we view the existence of 18 U.S.C. § 922(g), (h) as corroborating our construction of § 1202. Sub-sections 922(g) and (h), essentially a reenactment of earlier legislation,[6] prohibit the receipt from or transportation in interstate or foreign commerce any firearm by convicted felons and other enumerated categories of individuals. Section 922 was enacted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 197, the same act which contains § 1202 in Title VII. Moreover, Title IV was part of the original bill while Title VII was a last minute amendment. Unless § 1202 is construed to prohibit mere possession of firearms by felons, it would appear

---

6. See, 15 U.S.C. § 902(e), (f), Pub.L. 87–342, § 2, 75 Stat. 757.

that Congress amended the Omnibus Crime Control and Safe Streets Act with provisions which did little more than duplicate an existing portion of the Act. We cannot subscribe such an intent to Congress.[7]

■ We find, therefore, that the elements of an offense under § 1202(a) (1) are (1) the knowing and willing (2) possession of a firearm (3) by a previously convicted felon.

Having determined that § 1202(a) (1) prohibits the possession of firearms by felons without proof that the possession was in or affecting commerce and that, so interpreted, it is a valid exercise of congressional authority under the Commerce Clause, we are now faced with a number of other constitutional challenges to the statute.

It is argued that the classification of "felons" and "firearms" are both so arbitrary and unreasonable as to violate equal protection standards.

■ It is clear that the basic concepts of equal protection apply to the federal government through the Due Process Clause of the Fifth Amendment. See, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct.

693, 98 L.Ed. 884 (1954). The safeguards of the equal protection doctrine vary in degree depending on the nature of the right being affected by the legislation.[8] In our view, legislation restricting the possession of firearms " * * * will not be set aside if any state of facts reasonably may be conceived to justify it."[9] See, e. g., United States v. Wiley, supra; United States v. DePugh, 266 F.Supp. 453 (W.D.Mo.1967), aff'd, 393 F.2d 367 (8th Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968). Cf., United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970).

■ Judged by these standards, we think that the attacks on the classifications of "felons" and "firearms" fall short. While meritorious arguments can be advanced justifying narrower classifications, we view these as policy considerations which do not alter the fact that the classifications chosen have a rational basis. Our determination that the Commerce Clause authorizes § 1202(a) (1) as we have construed it in large measure compels the conclusion that the statutory classifications have a rational basis. Furthermore, the fact that Congress has provided in 18 U.S.C. § 925(c), that a person may obtain relief from § 1202(a) (1), under some circumstances,[10] is an

---

7. We are aware that the coverage of § 922 and § 1202(a) differ in some respects. However, we consider these differences insignificant in light of the overall similarity of coverage. We find the difference in the basis for the statutory ban on firearms—possession as opposed to receipt or transfer in interstate commerce —a much more rational and satisfying reason for the enactment of the separate provisions.

8. Compare, e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), with Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

9. In so doing, we decide only that the right to bear arms is not the type of fundamental right to which the "compelling

state interest" standard attaches. Cf., Shapiro v. Thompson, supra, 394 U.S. at 658–663, 89 S.Ct. 1322 (dissenting opinion by Harlan, J.); United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970).

10. 18 U.S.C. § 925(c) states in pertinent part:
"A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the

additional reason for finding the "felons" classification to be a reasonable one. *Cf.*, United States v. Thoresen, *supra*.

Section 1202(a) (1) is also attacked on the basis that it creates a presumption that the particular possession is in or has an effect on interstate commerce, and that this presumption is unconstitutional under the teachings of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). See also, United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

The fallacy in this argument is that it assumes that a connection between possession and interstate commerce is an element of a § 1202(a) (1) offense. In the cases relied upon by the defendants, the presumption attacked provided the fact finder with a necessary element of the offense and could, at least theoretically, be overcome by the defendant. For example, in Tot v. United States, *supra*, the defendant was charged with violating a statute which prohibited certain felons from receiving a firearm *which had been transported in interstate commerce*. The statutory presumption found wanting stated that possession of a firearm was prima facie evidence that the defendant had received the firearm after it had been transported in interstate commerce.

However, under § 1202(a) (1), as we have interpreted it, the fact that the possession was in or affecting commerce is not an element of the offense to be proven. It follows that the rationale of *Tot* and *Leary* is inapplicable. See also, United States v. Thoresen, *supra*, 428 F. 2d at 661.

We have already upheld the congressional finding that, in general, possession of a firearm by felons affects interstate commerce. This being so, Congress may prohibit the particular intrastate possession " * * * even though in that instance the effect on interstate commerce is minimal or non-existent." United States v. Perez, *supra*, 426 F.2d at 1078.

■ The next contention raised is that § 1202(a) (1) violates the Second Amendment right to bear arms. We do not agree. The leading pronouncement of the Supreme Court in this area states:

> "In the absence of any evidence tending to show that possession or use of * * * [the weapon] at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument."

United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939).

While the Court in *Miller* dealt with the prohibited possession of a sawed-off shotgun, the reasoning and conclusion of that case has carried forward to other federal gun legislation. Cases v. United States, 131 F.2d 916, 922 (1st Cir. 1942), cert. denied sub nom. Valazquez v. United States, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943); United States v. Tot, 131 F.2d 261, 266 (3rd Cir. 1942), rev'd on other grounds, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); United States v. Wiley, *supra*. We think it is also applicable here. Although § 1202 (a) is the broadest federal gun legislation to date, we see no conflict between it and the Second Amendment since there is no showing that prohibiting possession of firearms by felons obstructs the maintenance of a "well regulated militia." See, United States v. Wiley, *supra*, 309 F.Supp. at 144–145.

applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. * * * "

Finally, it is alleged that § 1202 (a) (1) is invalid as an ex post facto law. We think that the decision in Cases v. United States, *supra*, 131 F.2d at 920–921, adequately disposes of this argument.

Lastly, the defendant herein argues that even if his conviction would otherwise be valid under § 1202(a) (1), his earlier conviction under the City of Minneapolis Gun Ordinance bars this prosecution under the double jeopardy provision of the Fifth Amendment.[11] It is conceded by the government that the defendant's violation of the city ordinance resulted from the same conduct involved here and that the elements of proof in the two cases are identical.[12]

However, the government contends, and we agree, that the defense of double jeopardy does not bar successive prosecutions where, as here, there is no identity of sovereigns. We believe the decision of the Supreme Court in United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), specifically reaffirmed by Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), compels this result. See also, Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1967).

The defendant suggests that Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), indicates a rejection, or at least a weakening, of the "dual sovereign" concept. We doubt that it does. *Waller* decided only that successive municipal and state prosecutions were barred where the elements of the offense were identical. The Court reasoned that Florida municipalities were subdivisions of the State and not independent sovereigns.

Finding § 1202(a) (1) constitutional and the prosecution properly brought, the conviction is

Affirmed.

11. Counsel for the defendant suggested in oral argument, that the government abused its discretion in prosecuting this defendant for this offense in light of an alleged policy of the Justice Department against federal prosecutions in § 1202(a) cases in which a person had been previously convicted by a state court for the same offense. We do not find adequate support in this record to justify setting aside the conviction for an abuse of prosecutorial discretion. See, K. Davis, Discretionary Justice, A Preliminary Inquiry (1969).

12. Minneapolis Code of Ordinances, § 877.020, reads as follows:
"Persons Prohibited. It shall be unlawful for any person within the corporate limits of the City of Minneapolis to own, possess, carry, or have in his custody or control any firearms or ammunition unless such person: * * * (2) Shall not within the previous five years have been: (a) Convicted of a felony or drug addiction under the laws of this State or any other jurisdiction; * * * *"