UNITED STATES of America,
Plaintiff,

v.

Earthia B. WILEY, Defendant.

No. 4–69–Cr. 101.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 3, 1970.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Richard W. Swanson, Minneapolis, Minn., for defendant.

## ORDER

LARSON, District Judge.

### MEMORANDUM

The conviction on Count II is based on the defendant's 1959 conviction for armed robbery and his receipt and possession on July 14, 1969, of a Savage .22 semi-automatic rifle. Title VII of the Gun Control Act of 1968 provides in part:

"§ 1201. *Congressional findings and declaration*

The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the government of the United States

and of the government of each State guaranteed by article IV of the Constitution."

"§ 1202. *Receipt, possession, or transportation of firearms —Persons liable; penalties for violations*

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * *.

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

The Indictment against the defendant charged that:

"On or about the 14th day of July, 1969, at the City of Minneapolis, County of Hennepin, in the State and District of Minnesota, the defendant, EARTHIA B. WILEY, having been convicted by a court in the State of Minnesota of a felony, that is, robbery in the second degree, did wilfully and knowingly receive and possess a firearm, in violation of Title 18 Appendix, United States Code, Section 1202(a)."

Defendant, in the motion to arrest judgment, makes several attacks on the Indictment and Title VII. First, it is claimed that Count II does not state facts sufficient to constitute an offense against the United States. The language "in commerce or affecting commerce" does not appear in Count II of the Indictment. Defendant contends this is an essential element of the crime which must be proved, and that in the absence of such language, the Indictment does not allege facts sufficient to state a cause of action. Although § 1202 is at best unartfully worded, the Court cannot agree with defendant's reading of it. Given the language of § 1201, it seems clear that Congress had made a legislative finding of fact upon which § 1202 is based, namely that the possession of a firearm by those classified constitutes a

burden on or affects commerce. Consistent with § 1201, the whole phrase "in commerce or affecting commerce" is surplusage, or in any event should be read to modify only "transports" and not the other structurally independent terms "receives" and "possesses." To read the statute otherwise would render the Congressional finding of fact a nullity. See also Congressional Record, May 17, 1968, pp. 5848–5850.

Secondly, defendant argues that the presumption created by the finding in § 1201 cannot be used since there is a lack of logical nexus between possession of a firearm by a convicted felon and a resulting burden or effect on commerce. In the wrong hands firearms pose a threat and an obstacle to the enforcement of Federal laws. They are frequently employed in the commission of crimes against persons and goods moving in interstate commerce and against businesses engaging in or affecting interstate commerce. Thus they necessarily impose a substantial burden on commerce. Firearms are also frequently used in crimes against other federally protected interests, some of which are listed in § 1201, and others which include robberies of post offices, federally insured banks and interstate shipments, assault on Federal officers, violation of Federal game laws or interference with civil rights.

■ There is ample authority in the commerce power alone for the finding in § 1201 and its use in § 1202. The commerce power is broad enough to permit the regulation of local activities which affect commerce. See Heart of Atlanta Motel v. United States, 379 U.S. 241, 253–258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). The validity of § 1202 must be determined by whether Congress had a rational basis for finding the prohibition necessary to the protection of commerce. Katzenbach v. McClung, 379 U.S. 294, 303–304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).

■ A number of recent drug cases have sustained a sweeping exercise of the commerce power subject to the elements of reasonableness and necessity. It is clear that Congress has the power to impose a flat ban on certain sales of drugs, interstate and intrastate. Minor v. United States, 396 U.S. 87, fn. 13, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). See also White v. United States, 395 F.2d 5 (1st Cir. 1968), cert. den. 393 U.S. 928, 89 S.Ct. 260, 21 L.Ed.2d 266 (1968); White v. United States, 399 F.2d 813 (8th Cir. 1968). The gun control problem, like the problem of drug control, is one where sweeping controls are not only appropriate, but essential if there is to be an effective solution. Experience demonstrates and common sense agrees that an effective gun control system must include control of possession. Denying possession of guns to persons who are likely to misuse them is reasonably calculated to prevent subversion of local gun laws and the commission of State and Federal crimes, including crimes that affect interstate commerce. This is especially so in view of the high rate of recidivism by persons with conviction records. In devising the regulation, Congress is entitled to conclude that control can best be imposed through federally defined minimum nationwide standards. From a Constitutional standpoint, it is irrelevant that fewer than a majority of the persons within the prohibited class will use a weapon in a manner in or affecting commerce. The Constitution does not impose on Congress the impossible task of devising a system of regulation covering only those particular individuals who will commit such acts. Congress can reach interstate and intrastate distribution and sales, but such regulation cannot be effective unless Congress has the power also to reach those who possess such weapons. Minor v. United States, *supra*. The finding here is not inconsistent with the standard set down by the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

Thirdly, defendant claims that in general and as specifically applied to the defendant, § 1202 creates an unreasonable

and arbitrary classification and penalizes persons who have been convicted of offenses punishable by imprisonment for more than one year, thus denying them Due Process and Equal Protection. In essence, the issue is whether it is unreasonable or arbitrary to classify convicted felons separately from other citizens. So stated, the answer is obvious. FBI crime statistics indicate there were more than 99,000 armed robberies in the United States during 1968. Crime in the United States, J. Edgar Hoover (Wash. D.C.1969), at p. 15. They further indicate that since 1960 there has been a 302 percent increase in the total number of armed robberies, a 210 percent increase in the number of chain store robberies, and a 187 percent rise in gas station robberies, and a 107 percent rise in the number of commercial and business robberies. Congress in § 1201 undoubtedly saw the widespread use and possession of firearms by convicted felons as one of the major reasons for this cost and burden on commerce. A recent staff report to the National Commission on the Causes and Prevention of Violence noted that "Robbery is a crime made infinitely more possible by having a gun." Firearms and Violence in American Life, (1969), Appendix E at p. 190. For the purpose of § 1202, a more significant fact is that nearly 75 percent of all those arrested for robbery have prior criminal convictions. Crime in the United States, *supra*, at p. 15.

■■ The proposition that convicted felons may be considered a special risk to society is not unfamiliar to the Courts. It has been specifically acknowledged in prosecutions under the Federal Firearms Act, 15 U.S.C. § 902(e):

> "Congress in its wisdom has set up two classes of persons which it deems to be of such special risk of law and order as to be denied the right to carry firearms in interstate commerce. The first class is those who have been convicted of a felony. It appears to be well established that this is a lawful classification." United States v. DePugh, 266 F.Supp. 453, 454 (W.D.Mo.

1967), aff'd 393 F.2d 367 (8th Cir. 1968), cert. den. 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

It is not necessary that there be "an inescapable relationship" between past and future conduct to render the classification unreasonable. Reddy v. United States, 403 F.2d 26, fn. 1 (1st Cir. 1968), cert. den. 393 U.S. 1085, 89 S.Ct. 871, 21 L.Ed.2d 778 (1969). As previously stated, the Constitution does not require Congress to devise regulations which cover only those individuals who will commit such acts. In short, Congress did have a rational basis for finding that possession of firearms by convicted felons affected commerce, and the classification created as a means to eliminate that evil is appropriate.

■ Finally, defendant argues that §§ 1201 and 1202 are in themselves and in their application in this case violative of the Second Amendment guaranteeing the right of the people to bear arms. The Supreme Court decided over thirty years ago that the Second Amendment provided no privilege to possess a sawed-off shotgun proscribed by the National Firearms Act:

> "In the absence of any evidence tending to show that possession or use of (the sawed-off shotgun) at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939).

Article I, Section 8, vests in Congress the power to provide for the calling forth of the militia and for its organizing, arming, and disciplining:

> "With obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view." *Miller, supra,* at p. 178, 59 S.Ct. at p. 818.

There is no evidence here that the defendant was possessing the Savage .22 semi-automatic rifle with any thought or intention of contributing to the efficiency of the well-regulated militia. Cases v. United States, 131 F.2d 916, 923 (1st Cir. 1942), cert. den. *sub nom.* Velasquez v. United States, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943), reh. den. 324 U.S. 889, 65 S.Ct. 1010, 89 L.Ed. 1437 (1945). In essence, since there is support for the proposition that it is eminently reasonable to categorize convicted aggressors as a separate class whose individual right to bear arms may be prohibited, there can be no violation of a constitutionally protected right of defendant under the Second Amendment.

For these reasons, defendant's motion for arrest of judgment must be denied.