**UNITED STATES of America**
**v.**
**Cabell Clay JORDAN.**
**Crim. A. No. 187–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.
Jan. 18, 1971.

David G. Lowe, Asst. U. S. Atty., Richmond, Va., for plaintiff.

Beecher E. Stallard, Richmond, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

On December 20, 1969, at approximately 2:00 a. m., City of Richmond Police officers entered the defendant's home pursuant to a search warrant for illegal sale of whiskey. As the officers entered the house, they noticed that the defendant had a Colt .38 caliber pistol in his bathrobe. The defendant, having previously been convicted of a felony, was then arrested and subsequently prosecuted and found guilty of unlawful possession of a firearm. There was no evidence indicating that the pistol had ever been out of the defendant's home.

Title VII of the Gun Control Act of 1968, found in 18 U.S.C., Appendix sections 1201–1203 (following 18 U.S.C., section 5037), provides in part:

"§ 1201. *Congressional findings and declaration.* The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons * * * constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by Article IV of the Constitution."

"§ 1202. *Receipt, possession, or transportation of firearms*—Persons liable; penalties for violations

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony
* * *

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

At the trial, the defendant raised several questions attacking the constitutionality of the above statutes and the validity of his prosecution thereunder. Before passing final judgment, the court permitted counsel for the defendant to cite additional authority in support of his contentions.

The first point that the defendant urges upon the court is that the indictment was defective in that it did not allege that the defendant possessed the firearm "in commerce or affecting commerce" which, the defendant contends, is an essential element of the crime which must be proved. Secondly, the defendant urges that the presumptions established by section 1201; i. e., the possession of a firearm by a convicted felon, constitutes a burden on interstate commerce is unconstitutional in light of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), because there is no rational basis for determining that the mere possession of a firearm by a felon constitutes a burden on commerce.

Identical contentions were made in United States v. Wiley, 309 F.Supp. 141 (D.Minn.1970). There the defendant,

having previously been convicted of an armed robbery was tried for possession and receipt of a semi-automatic rifle. In answering the defendant's contention that there was a defective indictment because it did not include the language "in commerce or affecting commerce," the district court looked to the legislative findings of fact in section 1201; i. e., that possession of a firearm by those mentioned burdens commerce, and held that the words "in commerce or affecting commerce" in section 1202 were mere surplusage and in any event only modified the word "transports," and not "receives" or "possesses." As to the second contention that the presumption established by section 1201 cannot be used since there was no logical nexus between possession of firearms by a convicted felon and the resulting burden on commerce, the district court held that the validity of section 1202 must be determined by whether Congress "had a *rational basis* for finding the prohibition necessary to the protection of commerce." In holding that the Gun Control Act met this test, the court said (309 F.Supp. 143):

> "Experience demonstrates and common sense agrees that an effective gun control system must include control of possession. Denying possession of guns to persons who are likely to misuse them is reasonably calculated to prevent subversion of local gun laws and the commission of State and Federal crimes, including crimes that affect interstate commerce. This is especially so in view of the high rate of recidivism by persons with conviction records. In devising the regulation, Congress is entitled to conclude that control can best be imposed through federally defined minimum nationwide standards. From a Constitutional standpoint, it is irrelevant that fewer than a majority of the persons within the prohibited class will use a weapon in a manner in or affecting commerce. The Constitution does not impose on Congress the impossible task of devising a system of regulation covering only those particular individuals who will commit such acts. Congress can reach interstate and intrastate distribution and sales, but such regulation cannot be effective unless Congress has the power also to reach those who possess such weapons."

In addition to agreeing with the *Wiley* decision both as to its reasoning and result, we also conclude that our decision is not inconsistent with either Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) or Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), on which the defendant heavily relies. In *Tot*, the defendant was prosecuted under section 2 (f) of the Federal Firearms Act[1] which made it a crime for anyone previously convicted of a crime of violence to *receive* a firearm or ammunition shipped or transported in interstate commerce. The Act further provided that the possession of any firearm or ammunition by any such person shall be presumptive evidence that the firearm or ammunition was shipped, transported or received in interstate commerce. Tot was convicted of receiving a firearm in 1938 after having previously been convicted of two violent crimes, with no evidence that the gun had been *received* by him in interstate commerce. Since it had already been decided in the court below that the offense created by the Act is confined to the receipt of firearms or ammunition as part of an interstate shipment, and did not extend to receipt in an intrastate transaction, the question that the Supreme Court had to resolve was whether the statutory presumption could be used to establish the fact of an interstate shipment. In answer to this question

---

1. It should be noted that when the Omnibus Crime Control and Safe Streets Act of 1968 was enacted, the Federal Firearms Act was repealed.

the Supreme Court said (319 U.S. 467, 63 S.Ct. 1245):

"Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."

The court then reversed the conviction and held that the fact that a convicted felon possesses a firearm does not necessarily mean that he received it in interstate commerce. While *Tot* would control the decision in the present case if the crime was confined to the *receipt* of a firearm, the Federal Firearms Act (now repealed) did not include as a crime the "possession" of a gun. Thus the question is whether the mere possession of a firearm by a convicted felon affects the free flow of commerce or constitutes a burden upon commerce in light of the congressional findings and declaration.

In Leary, the defendant was prosecuted for, among other things, knowingly smuggling marihuana into the United States in violation of 21 U.S.C., section 176a. Part of section 176a included the presumption that possession was enough to establish knowledge that it was imported. In discussing the validity of criminal statutory presumptions, the Supreme Court said (395 U.S. 36, 89 S.Ct. 1548):

"The upshot of *Tot* * * * is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact from which it is made to depend. *And in the judicial assessment the congressional determination favoring the particular*

*presumption must, of course, weigh heavily.*" (Emphasis added.)

The court then went on to declare the presumption established by section 176a invalid, mainly because the soundness of the presumption had no firm basis in the legislative history of the statute. Furthermore, the evidence presented showed that in fact there is a great deal of marihuana grown in the United States. In ruling the presumption invalid, however, the court said that "it must be kept in mind that 'significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it.' "

Although the respective presumptions in *Tot* an*d Leary* were held invalid, we feel that the presumption established in the Gun Control Act is valid and wholly consistent with those two decisions. In our case Congress has not merely established a presumption to aid the prosecution in proving a case without any factual finding to support the presumption as in *Leary*. Rather, Congress has made legislative findings in section 1201 which are supported by the legislative history of the Gun Control Act of 1968.[2] Numerous witnesses appeared before Congress to relate the grim statistics on the rising crime rate and the gross inadequacy of the then existing federal laws on control and shipment of firearms across state lines. It may also be added at this point that it takes no specific congressional finding to recognize, as Judge Larson did in *Wiley*, that there is a high rate of recidivism by convicted felons. Furthermore, we take judicial knowledge of the fact that the use of guns in violent crimes such as murder, robbery, kidnapping, assaults and many other crimes involving the federal government, or within the realm of federal jurisdiction, ultimately involve probable interstate flight by the criminal or an interruption or burden on interstate commerce and travel of the victim. We

---

2. *See* U.S.Cong. & Admin.News, 90th Cong., 2d Sess. pp. 4410 et seq. (1968). *See also* the extensive congressional findings found in the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968 found in U.S.Cong. & Admin.News, 90th Cong., 2d Sess. pp. 2112 et seq. (1968).

therefore conclude that there is a sound and rational basis for the findings of section 1201 which meets the test of *Leary* and *Tot*.[3]

On its own, the court raises an additional question of whether a convicted felon may possess a gun for his personal protection. This is a particularly pertinent question in this case because here police officers came unexpectedly to the defendant's home late at night using the front door which was seldom used by the defendant or his friends. Under such circumstances it would not be unusual for one to take some measure of personal protection. Congress, however, has precluded the possession of a gun as one of those measures where the one on guard is a convicted felon as affecting the free flow of commerce or constituting a burden upon commerce.[4] It is true that a stated purpose of Congress in enacting the Gun Control Act of 1968 is "not * * * to place any undue or unnecessary Federal restrictions or burdens on *law-abiding citizens* with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, *personal protection*, or any other lawful activity * * *."[5] (Emphasis added.) It will be noticed, however, that here Congress is speaking about *law-abiding citizens* which of course would not include convicted felons. This interpretation is consistent with the Gun Control Act which has made a separate crime out of the mere possession of a gun by a convicted felon.

Since the defendant was found guilty, we now have the benefit of his prior criminal record. At the trial it was merely stipulated that defendant was a convicted felon. A study of the defendant's extensive criminal record, including many acts of violence, merely demonstrates the wisdom of Congress in prohibiting possession of firearms by convicted felons as affecting commerce.

---

3. The same conclusion was reached in at least two other unreported decisions in the United States District Court for the Eastern District of Virginia. These were United States v. Childress (Criminal Action 8039–R by Judge Merhige) and United States v. Romayo, (149–69–R by Judge MacKenzie).

4. It seems clear from Heart of Atlanta Motel v. United States, 379 U.S. 241, 255, 258, 85 S.Ct. 348, 356, 358, 13 L.Ed.2d 258 (1964), that the test of the exercise of power by Congress under the Commerce Clause is simply whether the activity sought to be regulated is "commerce which concerns more States than one," and the local operation must give way "if it is interstate commerce that feels the pinch." Under the specific findings and congressional history of the Gun Control Act it is effectively demonstrated that convicted felons, as a class, are widely engaged in interstate activity.

5. The legislative history of the Gun Control Act refers to Public Law 90–618 which is found in U.S.Cong. & Admin. News, 90th Cong., 2d Sess., pp. 1397 et seq. Section 101 of the history states the purpose quoted above. This purpose is also found in the Omnibus Crime Control and Safe Streets Act of 1968. Section 901(b) of Public Law 90–351, U.S. Cong. & Admin.News, 90th Cong., 2d Sess., p. 271.