**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Fendel P. OCLIT, Defendant.**

**Crim. No. 12646.**

United States District Court,
D. Hawaii.

May 11, 1972.

Robert K. Fukuda, U. S. Atty., Harold M. Fong, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Myer C. Symonds, Honolulu, Hawaii, for defendant.

## MEMORANDUM DECISION

PENCE, Chief Judge.

The following is an amplification of the rationale underlying this court's

rejection in open court on April 21, 1972, of defendant's motion for judgment of acquittal.

This court, pursuant to defendant's motion under 28 U.S.C. § 2255, in an order dated April 3, 1972, vacated and set aside defendant's sentence, relying entirely on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The government thereafter moved that the indictment be dismissed without prejudice. The defendant responded with his own motion for judgment of acquittal. Both motions were argued and rejected at the April 21st hearing. The reasons for refusing the government's motion were adequately noted at the hearing and therefore will not be reviewed again here.

Basing his argument on Part III of the *Bass* decision, defendant asserts that for the offense of possession, the interstate commerce nexus (required per *Bass*) must take place after the effective date (June 19, 1968) of the statute. Therefore, defendant contends, because the indictment admits in Count I that the gun possessed by Oclit was mailed on September 22, 1967, to Honolulu from Hartford, Connecticut, the interstate nexus requirement was not satisfied (it came too early) and a judgment of acquittal should be entered.

■■■ Although Part III of *Bass* is not a model of clarity, this court cannot agree that it can serve as a basis for the judgment of acquittal requested. The following language in *Bass, supra*, at 350, 92 S.Ct. at 524, is in point:

"The Government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, *or if the possession affects commerce*. Significantly broader in reach, however, is the offense of 'receiv[ing] . . . in commerce or affecting commerce,' for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce." (Emphasis added; footnote omitted.)

Notwithstanding the fact that the Court expressly noted that its list of examples was not meant to be exclusive, the meaning of its phrase "or if the possession affects commerce" is decisive in this case. The two previous "examples" ("at the time of the offense the gun was moving interstate or on an interstate facility") envision that the possession and interstate connection be contemporaneous, i. e., *while* the gun was moving interstate or on an interstate facility, the defendant had possession of it. Therefore, since all concede that the possession must be after June 19, 1968, the interstate nexus in these two examples would of necessity have to be after that date also. However, the "affecting commerce" language is not so limited. Giving that phrase its logical meaning and content, it seems obvious that a post-June 19, 1968 possession can "affect commerce", even though the interstate nexus took place before that date. Indeed, in 18 U.S.C. App. § 1201, Congress explicitly found that no matter when or even if the interstate nexus took place, possession of firearms by a felon in itself affects commerce.[1] However, reliance on such a broad interpretation is not necessary in order to refute the argument that the interstate element must take place after June 19, 1968. For example, in this case, if the government can show the gun was stolen from the mails sometime in September of 1967 (as is alleged in Count I of the indictment) and the defendant possessed it any time after June 19, 1968, then it

---

1. See footnote 14 of *Bass, supra*, at 345–346, 92 S.Ct. 515.

cannot rationally be contested that the possession of such stolen gun affected commerce and therefore must come within the statute.

■ The "significantly broader in reach" language in Part III of *Bass* on its bare words would seem to indicate that the nexus requirement for possession is narrower than that needed for "receipt". However, even if that is true, this does not in itself assist the defendant in his contention that the date of the nexus is determinative. For example, if the government can here prove that the gun was stolen from the mails in September 1967, this would constitute a more stringent showing than "the previously traveled in interstate commerce" nexus that is required for receipt. Yet, the interstate element still took place before June 19, 1968.

Nor can the defendant derive any support from 18 U.S.C. App. § 1202(a) itself. It reads in its relevant part:

"Any person who—

"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses or transports in commerce or affecting commerce, *after the date of enactment of this Act*, any firearm . . . ." (Emphasis added.)

This court thinks it is obvious that the "after the date of enactment" clause modifies only "receives", "possesses" or "transports", and *not* the interstate element. This interpretation is not only consistent with the legitimate purposes of the statute, but also with the rationale of the *Bass* decision itself, *i. e.*, "the sensitive relation between federal and state criminal jurisdiction. . . ." 404 U.S. at 351, 92 S.Ct. at 524. Both can be fully served by simply requiring the existence of an interstate nexus and not by insisting that it must take place at a particular time.