**UNITED STATES of America**

v.

**Tyrone Roosevelt SNELL.**

**Crim. No. 72–0382–Y.**

United States District Court,
D. Maryland.

Jan. 5, 1973.

---

Michael E. Marr, Asst.U.S.Atty., Baltimore, Md., for plaintiff.

Melvin J. Kodenski, Baltimore, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Tyrone Roosevelt Snell, convicted of a felony in the courts of Baltimore City, has been indicted in this Court for possession of a deadly weapon. A convicted felon who "receives, possesses, or transports in commerce or affecting commerce" a firearm, violates 18 U.S.C. App. § 1202(a). Snell has moved to dismiss the indictment on the basis of United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), which held that "the phrase 'in commerce or affecting commerce' is part of all three offenses," 404 U.S. at 347, 92 S.Ct. at 522, and not just a part of the offense of transportation. Unlike the indictment involved in the Bass decision, Snell's indictment does contain the requisite interstate commerce allegation. But it has been stipulated that the Government can prove no connection between Snell's possession of the gun and interstate commerce other than the records of the manufacturer, which reveal it was shipped from Massachusetts to Washington, D. C. after its manufacture in 1922, and the fact that defendant was arrested in Baltimore, Maryland, in 1971, in possession of the gun. Thus, while United States v. Bass held that possession must be "in commerce or affecting commerce" to be within Section 1202(a), Snell's motion raises the issue of the *degree* of connection with commerce which satisfies the Act. Defendant Snell urges a construction of the phrase "possession . . . in commerce or affecting commerce" which would restrict the offense to possession while the gun was in the stream of commerce.

### I.

Defendant's belief that the construction of the Act implied by his indictment would be unconstitutional may be put aside at once. Prior to the *Bass* decision, the Court of Appeals for the Fourth Circuit had decided that the section posed no constitutional problems, even as then interpreted to require *no* connection with interstate commerce. United States v. Cabbler, 429 F.2d 577 (4 Cir. 1970), United States v. Mullins, 432 F.2d 1003, (4 Cir. 1970). In this respect, the Fourth Circuit was in agreement with the Fifth Circuit, United States v. Donofrio, 450 F.2d 1054 (1971), the Sixth, Stevens v. United States, 440 F.2d 144 (1971), the Eighth, United States v. Synnes, 438 F.2d 764 (1971) and the Ninth, United States v. Daniels, 431 F.2d 697 (1970); and opposed only by the Second Circuit, United States v. Bass, 434 F.2d 1296 (1970).

Those circuits which had ruled that no interstate commerce nexus need be shown for Section 1202(a) receipt or possession were reversed by the Supreme Court in United States v. Bass, *supra*. Basing its decision on the grammatical uncertainty of the phrase and the maxim that the criminal statutes are to be narrowly construed, the Court explicitly eschewed deciding whether the Constitution required that each possession or receipt be connected with interstate commerce. *Bass* restricted the reach of Section 1202(a) to some as yet undefined degree. It did not reject the position of those courts, such as the Court of Appeals for the Fourth Circuit, which had found possession and receipt entirely apart from interstate commerce to be constitutional. The narrower post-*Bass*

Section 1202(a) reinforces that holding of constitutionality.

Thus the Court's duty on Snell's motion is to interpret the statute. But that duty is a curious one, since the Supreme Court in *Bass* reviewed and discounted the impact of the section's legislative history. The Court found nothing in the legislative history to indicate explicitly whether or not Congress intended that there be an interstate commerce nexus for the receipt and possession offenses. Had Congress been clear on this subsidiary question of the degree of that nexus, the Court could not have termed the legislative history inconclusive as it did. The *Bass* decision must be taken as a statement that the legislative history is no guide to determining the manner of nexus with commerce that Congress intended to be shown. And thus this Court's interpretation of this statute is an instance of the phenomenon Justice Frankfurter referred to in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951): "[T]he fair interpretation of the statute is often 'the art of proliferating a purpose' . . . revealed more by the demonstrable forces that produced it than by its precise phrasing." p. 489, 71 S.Ct. p. 465. Though Congress' position on whether there must be a demonstrated interstate nexus must be considered uncertain, it is clear that Congress intended the new gun control legislation to be significantly more stringent than existing laws. And since the history of gun control legislation in this country is a history of concern with problems of proof, it would be reasonable to conclude that Congress did not wish to extend those problems into the new legislation.

18 U.S.C. App. Section 1202(a) was a part of Title VII, Pub.L. No. 90–351 of June 19, 1968, known as the "Omnibus Crime Control and Safe Streets Act of 1968." Title IV of that Act, replaced the Act of June 30, 1938, Ch. 850, 52 Stat. 1250, codified as 15 U.S.C. §§ 901–910, the country's early experience with gun control legislation. Section 2(f) of Ch.

850 made it illegal for a convicted felon to receive certain guns which had been shipped in interstate commerce. The Section provided that receipt in commerce was to be presumed from the fact of possession.

This attempt to simplify proof of receipt in commerce was treated roughly by the courts. In United States v. Tot, 42 F.Supp. 252 (D.N.J.1941), the Government proved that defendant had possessed the gun, was a convicted felon, and that the gun was made in Connecticut and shipped after manufacture to Illinois. The proof of shipment did not negate the possibility that Tot had personally received the gun in intrastate commerce. To negate that possibility it was necessary to rely on the evidentiary presumption, and that presumption was held to be impermissible by the court. In the Supreme Court, the Government conceded that Section 2(f) did not reach felons whose personal receipt was in intrastate commerce, United States v. Tot, 319 U.S. 463, 466, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); and relied unsuccessfully on the statutory presumption. No explanation for confining the statute to receipts immediately connected to interstate commerce was given.

Because of the *Tot* holding, it has never been enough for the Government to show that a felon received a firearm that had *once* moved in commerce. This immediate intrastate receipt exception to the gun control law was left untouched by the Omnibus Crime Control Act revision. 18 U.S.C. § 922(h).

Another example of Congress' attempt to design a gun control law that would lead to conviction after proof of possession is found in the tax laws. As originally set up, the statutory scheme made it illegal to transfer certain firearms except by filling out prescribed order forms. Internal Revenue Code, Ch. 736, 68A Stat. 723. Another section of the Act made it unlawful to possess a firearm which had at any time been transferred in violation of the Act, and provided that it was to be presumed from unexplained possession that the firearm

had been transferred in violation of the Act. 68A Stat. 728. Thus the Act was designed to facilitate conviction upon proof of possession, if that possession could not be shown to have been lawfully acquired. The presumption was restricted by court decision in order to avoid Fifth Amendment problems, Varitimos v. United States, 404 F.2d 1030 (1st Cir. 1968), and it was eliminated when Ch. 736 was replaced by 26 U.S.C. § 5861.

In both the Act of June 30, 1938, Ch. 850 and the Internal Revenue Code, Ch. 736, Congress had attempted to facilitate proof of receipt or acquisition of firearms by permitting inferences to be drawn from mere possession. (Possession is, of course, much easier to prove than the manner by which, or the time at which, the defendant came into possession.) Given this difficult experience in attempting to utilize the fact of possession to obviate need for proving the manner of acquisition, it seems unreasonable to conclude that once Congress determined that possession alone was to be illegal it would hamper prosecution for the new offense with the requirement that the Government show a contemporaneous interstate commerce movement, which requirement might frequently amount to proof regarding the manner of acquisition of the firearm. Snell's position that the Government must prove that the felon possessed the gun *while it was in* interstate commerce would create the very problems of proof that it would seem Congress meant to avoid by making possession itself illegal.

This same pattern of Congressional reaction to difficulties of proof, which the Court suggests partially explains Section 1202(a), is apparent in the recent history of the federal drug control laws. When Congress directed its attention to the trafficking in drugs, it provided that unexplained possession raised the presumption of such trafficking. Act of July 18, 1956, Ch. 629, § 105, 70 Stat. 570. That presumption was invalidated in part in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, decided in January of 1970. Later that same year, by Pub.L.No. 91–513, Congress eliminated the presumption and made simple possession a crime. 21 U.S.C. § 844.

It may be that a literal reading of the phrase "possession . . . in commerce or affecting commerce" would support the view that only possession while the gun is in commerce is sufficient, though such a view seems to accord no significance to the phrase "or affecting commerce", a phrase not used generally in the Act. See 18 U.S.C. § 922(h). But the history of the gun control laws, the parallel experience with the drug laws, and the concern expressed by Congress with the accessibility of guns to convicted felons, see 18 U.S.C. App. § 1201, all point to the conclusion that the narrower reading of Section 1202(a) would not preserve the core of the Congressional purpose. The process of interpretation "misses its high function if a strict reading of a law results in the emasculation . . . of a provision which a less literal reading would preserve." Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165 (1945).

## II.

Defendant relies on certain language in the *Bass* opinion that seems to support his contention that the statute reaches only possessions contemporaneous with interstate commerce movement. See 404 U.S. at 350, 92 S.Ct. 515.

There are several reasons not to accord that language the definitive weight which the defendant would. The issue defendant raises by his motion was not before the Supreme Court in *Bass*. And though the Court spent much of its opinion disparaging the legislative history of the Act, it provided no clue as to what lead it to reach the conclusion contained in the language defendant relies on. The Court's cryptic reference to preserving certain differences between Title IV and Title VII certainly does not explain those conclusions, since it had been stated explicitly earlier in the opinion that "no conclusion can be drawn from Title IV concerning the correct interpretation of

Title VII." 404 U.S., at 344, 92 S.Ct. at 521.

The passage in the *Bass* opinion upon which defendant relies must be read with reference to the Court's decision not to give its holding a constitutional dimension. The Court did not decide that any nexus with commerce would be constitutionally required, and thus it did not remotely touch on the question of what manner of nexus must be shown if the Constitution requires any at all. It can not be, then, that the Court intended to lay down crisp guidelines on the manner of interstate nexus required, lest its instructions on that point foreclose constitutional inquiry into the issue. If the Court's dicta is taken to be an endorsement of certain degrees of interstate commerce nexus, then the Court would seem to be on record regarding the constitutional as well as the statutory requirements. And a fair reading of the opinion indicates that the Court had no such guidance in mind.

Interestingly enough, the Court's dicta, if given the force of precedent, would seem to have also broadened Section 1202(a) in a significant way, by taking Section 1202(a) "receipt" beyond Tot v. United States, *supra.* The Supreme Court in *Tot* had restricted the offense of the receipt of a firearm "which *has been* shipped" in commerce (emphasis supplied) to immediate receipts from interstate commerce.

Yet having taken this rather radical position, the Court in *Bass* supplied no reason why not to go as far with the new possession offense, even though the statutory wording of the possession offense is parallel with that of the receipt offense, and even though the offense of possession of firearms by felons is not freighted with the historic limitations that the offense of receiving firearms is.

It is understandable that the Court might conclude that receipt of a firearm was forbidden if the firearm had *ever* passed in interstate commerce. Congress had taken that course else-

where in its regulation of firearms. Internal Revenue Code, Ch. 736, 68A Stat. 723. And if Congress did wish to establish a different interstate nexus for possession than for receipt, it could easily have resorted to the explicit language of other statutes by which it made it clear that the offense was to be limited to transactions contemporaneous with interstate transportation. E. g. the offense of receipt of stolen goods, 18 U.S.C. §§ 2314–2317, is limited to receiving goods "moving as, or which are a part of, or which constitute" interstate commerce.

What is not understandable is that possession should be treated any differently from receipt. A construction of Section 1202(a) that would read a different interstate commerce nexus into "possession . . . in commerce or affecting commerce" and "receives . . . in commerce or affecting commerce" would create, rather than resolve, ambiguity. A differing approach to the two parallel phrases thus seems inconsistent with the thrust of the *Bass* decision.

This analysis of Part III of the opinion in United States v. Bass indicates that the Supreme Court did not intend its language therein to substitute for the sort of statutory construction of Section 1202(a) which has lead this Court to conclude that the possession offense is not limited to possession while the firearm is in the stream of commerce.

■■ The construction of the statute which the Court adopts does not add measurably to any element of surprise that is inherent in the law. It has been consistently held that, while a felon must knowingly possess the gun to be convicted, he need not be aware that such possession is illegal, United States v. Crow, 439 F.2d 1193 (9th Cir. 1971); United States v. Quiroz, 449 F.2d 583 (9th Cir. 1971), nor even be aware he is a felon, United States v. One Lot of 18 Firearms, 325 F.Supp. 1326 (D.N.H. 1971). Whether a felon knows that the gun he possesses, or receives, has ever

moved in commerce should similarly be of no significance.

Accordingly, it is

Ordered that defendant Tyrone Roosevelt Snell's motion to dismiss the indictment be and the same is hereby denied.