**UNITED STATES of America**

v.

**Leroy WILLIAMS.**

**No. 72 H CR 133.**

United States District Court,
N. D. Indiana,
Hammond Division.

Feb. 11, 1974.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., and Andrew B. Baker, Asst.

U. S. Atty., Hammond, Ind., for plaintiff.

Nick Thiros, Gary, Ind., for defendant.

MEMORANDUM OPINION
and
JUDGMENT ORDER

PERRY,* Senior District Judge.

Defendant Leroy Williams was indicted by a federal grand jury in the Northern District of Indiana on November 14, 1972 for violation of Title 18, United States Code, Appendix § 1202(a)(1), which reads in pertinent part:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

After alleging that the defendant had been thrice convicted of felonies by the Criminal Court of Lake County, Indiana, the indictment charged that Williams:

. . . did knowingly receive, possess and transport in commerce and affecting commerce a firearm (description omitted) which had been shipped and transported in interstate commerce from Hialeah, Florida, to Gary, Indiana, in violation of Section 1202(a)(1), Title 18, United States Code (Appendix).

When arraigned in December, 1972, Williams entered a plea of not guilty. In an agreement to submit the case for trial on stipulated facts, filed on May 4, 1973, the defendant: (1) waived his

---

* Joseph Sam Perry, Senior Judge from the U. S. District Court for the Northern District of Illinois, sitting by special designation

in the United States District Court for the Northern District of Indiana.

rights to a jury trial, to confront and cross-examine Government witnesses, and to cross-examine (sic) witnesses in his own behalf; (2) agreed to submit the case to the court without a jury on the stipulated facts; and (3) stipulated to the following facts:

(a) Williams had been convicted of felonies in 1961, 1962 and 1966;

(b) in July, 1972, two police officers saw Williams in possession of an M–1 carbine automatic rifle in Gary, Indiana;

(c) said rifle was manufactured in Hialeah, Florida; and was in May, 1971 shipped to and received in Gary, Indiana, by Montgomery Ward & Co., which placed said rifle on display in its Gary, Indiana store;

(d) said rifle was sold in August, 1971 to one Henry Poole.

Both parties filed briefs on the legal issues involved in this case and the court took the cause under advisement until this date.

Defendant relies heavily on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488. His reliance is misplaced.

In *Bass, supra,* the defendant was convicted of possessing firearms in violation of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, codified as 18 U.S.C. App. § 1202(a). The indictment did not allege, and the Government made no attempt to show, that the firearms involved had been possessed "in commerce or affecting commerce", the Government having proceeded on the assumption that § 1202(a)(1) banned all possessions and all receipts of firearms by convicted felons, and that no connection with interstate commerce had to be demonstrated in individual cases involving possession or receipt of firearms. Such had been the holding of five of the six United States courts of appeal which had passed upon this issue.[1] The Court of Appeals for the Second Circuit stood opposed to the Government's position.[2]

The specific question before the Supreme Court in *Bass* was whether or not the Government must allege and prove that a convicted felon possessing a firearm did so "in commerce or affecting commerce". The central issue was whether or not the statutory phrase "in commerce or affecting commerce" applies to the antecedents "possesses" and "receives" as well as to the immediate antecedent "transports". 404 U.S. at 339 and 347, 92 S.Ct. 515. The Court held that the phrase "in commerce or affecting commerce" does apply to the words "possesses" and "receives" as well as to the word "transports". Because the Government had failed to show the requisite nexus between interstate commerce and possession of the firearm, the Court held that Bass' conviction must be set aside. 404 U.S. at 347, 92 S.Ct. 515.

The decision of the Court in *Bass* was based on two principles: first, §

1. United States v. Cabbler, 429 F.2d 577 (4th Cir. 1970), cert. denied, 400 U.S. 901, 91 S.Ct. 138, 27 L.Ed.2d 138; United States v. Mullins, 432 F.2d 1003 (4th Cir. 1970); United States v. Donofrio, 450 F.2d 1054 (5th Cir. 1971); Stevens v. United States, 440 F.2d 144 (6th Cir. 1971) (Judge Celebrezze dissenting); United States v. Synnes, 438 F.2d 764 (8th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657; United States v. Wiley, 438 F.2d 773 (8th Cir. 1971), vacated 404 U.S. 1009, 92 S.Ct. 686, 30 L.Ed.2d 657; United States v. Taylor, 438 F.2d 774 (8th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 686, 30 L.Ed.2d 657; United States v. Daniels, 431 F.2d 697 (9th Cir. 1970); and United States v. Crow, 439 F.2d 1193 (9th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657.

2. United States v. Bass, 434 F.2d 1296 (2d Cir. 1970), aff'd 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) where the Court concluded that the phrase "in commerce or affecting commerce" in § 1202(a)(1) modifies the word "possesses" as well as the immediate antecedent, "transports". The Court's decision was grounded partly on grammatical construction and partly on its belief that federal proscription of mere possession of firearms without some nexus with interstate commerce might be unconstitutional.

1202(a)(1), because it was ambiguous as to whether the phrase "in commerce or affecting commerce" applied to the possession offense as well as to the transportation offense, failed to notify an accused person of what conduct was prohibited; second, the Court, absent clear legislative direction, could not adopt a broader reading which would prohibit purely intrastate conduct,—receiving and possessing firearms,—because such construction would cause the statute to "mark a major inroad into a domain traditionally left to the States" (*Bass*, 404 U.S. at 339, 92 S.Ct. at 518), and arguably beyond the reach of federal power. In 18 U.S.C. App. § 1201 Congress had set out what the Court construed as a declaration of the extent of the power of Congress in the area of gun control under the Commerce Clause. The Court did not believe, however, that § 1201 necessarily indicated Congress' intent to exercise the full extent of its power in § 1202(a)(1). The Court thus left open the question of whether, upon appropriate findings, Congress can constitutionally punish the mere possession of firearms.[3]

It is appropriate now to emphasize that the Supreme Court did not hold in *Bass* that it is necessary for the Government, in order for a conviction under § 1202(a)(1) to be sustained, to show that either the defendant or the firearm was in the stream of commerce at the time the defendant received or possessed the firearm. In *Bass*, the Supreme Court was not called upon to decide, and did not decide, the issue of the case now before this court, namely, whether or not the commerce requirement of § 1202(a)(1) ("in commerce or affecting commerce") is satisfied by a showing that the firearm possessed or received by a convicted felon, has *previously* been transported in interstate commerce.

The aforedescribed issue now before this court was presented to and decided by the courts in favor of the Government in the following cases: United States v. Brown, 472 F.2d 1181 (6th Cir. 1973); United States v. Giannoni, 472 F.2d 136 (9th Cir. 1973), cert. denied, 411 U.S. 935, 93 S.Ct. 194, 36 L.Ed.2d 396; United States v. Day, 476 F.2d 562 (6th Cir. 1973); United States v. Mancino, 474 F.2d 1240 (8th Cir. 1973); United States v. Mullins, 476 F.2d 664 (4th Cir. 1973); United States v. Snell, 353 F.Supp. 280 (D.Maryland 1973); and United States v. Oclit, 343 F.Supp. 447 (D.Hawaii 1972).

United States v. Brown, *supra*, is directly in point with the case at bar. In *Brown*, the defendant, a convicted felon, was charged in the indictment with receiving and possessing a firearm which had moved in interstate commerce, in violation of 18 U.S.C. App. § 1202(a)(1). As in the case at bar, the defendant waived trial by jury and the case was tried on stipulated facts. The firearm had moved in interstate commerce in April of 1970 and was found, about nineteen months later, in the possession of the defendant. Affirming the judgment of conviction, the Court of Appeals for the Sixth Circuit held that the Government had shown that the previous movement in interstate commerce constituted sufficient nexus with interstate commerce for Brown's conviction to be sustained. After quoting from Part III of the opinion of the Supreme Court in *Bass, supra,* the Court said, 472 F.2d at 1182:

> . . . the Government has met its burden because "it demonstrates that the firearm received has previously traveled in interstate commerce." (Emphasis added.) The Court did not place any time limit on the previous movement; neither do we.

---

3. This court's summary of the *Bass* decision is based in part upon the thorough expositions of Circuit Judge Thornberry in United States v. Nelson, 458 F.2d 556 (5th Cir. 1972), rehearing denied (1972), and of District Judge Battin (sitting by designation) in United States v. Redus, 469 F.2d 185 (9th Cir. 1972).

*   *   *   *   *   *

Brown was convicted of receiving and possessing the firearm. However, as we pointed out in United States v. McCreary, 455 F.2d 647 (6th Cir. 1972), one could not very well possess a firearm without receiving it.

In United States v. Giannoni, *supra*, the defendant was convicted of having received a firearm in violation of 18 U. S.C. App. § 1202(a). The weapon alleged to have been received by Giannoni had been manufactured in 1918 outside the state of California and, sometime during the next forty years, was brought by the Government into California, where it was purchased in 1958 by a resident of the state. The weapon was taken from a coin shop in 1971 during the course of a robbery committed by Giannoni.

The Court held that a sufficient nexus with interstate commerce had been alleged and proved. The Court stated:

Appellant argues that the interstate commerce nexus proved in this case of at least 13 years prior to the robbery, is simply 'too tenuous and strained.' He contends that this is not sufficient 'to justify the assertion of federal jurisdiction over what is purely a local matter.' The statute makes no such limitation and the Supreme Court in United States v. Bass (citation omitted) said:

*   *   *   *   *   *

The Government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility or if the possession affects commerce. Significantly broader in reach, however, is the offense of 'receiv(ing) . . . in commerce or affecting commerce,' for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce.

404 U.S. at 350, 92 S.Ct. at 524.

*   *   *   *   *   *

Where neither the Congress nor the Court has drawn a line as to time, we find no reason to do so.

472 F.2d at 137.

United States v. Day, *supra*, involved the conviction, after a jury trial, of receiving and possessing firearms in interstate commerce under 18 U.S.C. App. § 1202(a)(1). Day, who had been dishonorably discharged from the United States Army in 1945, had, on four separate occasions in 1970, sold in Kentucky seven handguns to a special investigator of the U.S. Treasury Department. In March of 1970, on the execution of a search warrant, 96 firearms were seized from Day's house and adjacent trailer in Kentucky. The Court, finding that there was competent evidence to indicate that the guns found in Day's possession were manufactured in Connecticut and in Massachusetts, held that there was a sufficient interstate nexus to sustain the conviction. The Court stated, at page 569 of 476 F.2d:

If there is competent evidence to show that the guns possessed and received by the defendant were manufactured in a state outside of Kentucky, the state of possession in the present case, the conclusion is inescapable and the inference is permissable that the gun has traveled in interstate commerce before reaching the defendant. *It should be noted that there is no requirement that the interstate commerce be shown to have been directly to Day.* (Citation of *Brown, supra,* omitted). In this case, there was competent evidence before the jury to indicate that the guns found in appellant's possession were manufactured in Hartford, Connecticut, and Springfield, Massachusetts. Thus, the interstate nexus requirement of *Bass* was satisfied. (First emphasis added.)

In United States v. Mancino, *supra,* the defendant was convicted of having received three firearms in commerce, after being convicted of a felony, in violation of 18 U.S.C. App. § 1202(a). The evidence revealed that the guns had been manufactured in Connecticut and Massachusetts and were shipped in 1966 and 1970 to Minnesota where they were sold to a hardware store from which they were stolen by one Charles Thiede in April, 1971. Thiede then sold the guns to Mancino on April 30, 1971. Defendant contended that no nexus with interstate commerce was shown, and that the trial court judge's instructions relating thereto were in error. The trial court had instructed the jury, *inter alia,* that "a firearm is received in commerce or affecting commerce if it had previously traveled between two states of the United States". The Court of Appeals held that there was no error in the instructions. The Court then quoted from the same passage in Part III of the *Bass* opinion as did the Sixth and Ninth Circuit Courts of Appeal in *Brown,* and *Giannoni, supra,* respectively. The Court stated, 474 F.2d at 1242:

> Mancino claims this language is dicta, but in our view it is not only a correct statement of the law but also the only indication which we have been given by the Supreme Court as to its interpretation of the requirement. We note that the Sixth Circuit and the Ninth Circuit have also recently relied upon this portion of *Bass.* (Citations of *Brown* and *Giannoni, supra,* omitted.) For these reasons, the judgment of conviction is affirmed.

In United States v. Mullins, *supra,* a firearm had been transported from California to Georgia in March, 1971, and from Georgia to Virginia in September, 1971. Mullins was found in possession of the firearm in February, 1972. The Court held that the following instruction to the jury by the trial court was correct:

> . . . the Government may meet its burden of proving a connection between commerce and the receipt or possession of a firearm by a convicted felon if it is demonstrated that the firearm received or possessed by a convicted felon had previously traveled in interstate commerce. . . .

and that the verdict of guilty thereunder was un-impeachable. *Mullins,* 476 F.2d at 664.

In United States v. Snell, *supra,* defendant Snell, previously convicted of a felony, had been indicted for possession of a deadly weapon, in violation of 18 U.S.C. App. § 1202(a). Snell moved to dismiss the indictment on the basis of *Bass, supra.* Unlike the indictment involved in *Bass,* Snell's indictment did contain the requisite interstate commerce allegation, but it was stipulated that the Government could prove no connection between Snell's possession of the gun and interstate commerce, other than the records of the manufacturer, which revealed that the gun had been shipped from Massachusetts to Washington, D. C. after its manufacture in 1922, and that the defendant was arrested in Baltimore, Maryland in 1971 in possession of the gun. The defendant urged a construction of the phrase "possession . . . in commerce or affecting commerce" which would restrict the offense to possession while the gun was in the stream of commerce. Defendant relied on certain language contained in Part III of the *Bass* opinion. After a rather lengthy analysis of Part III of the *Bass* opinion, the Court rejected defendant's construction, and said, 353 F.Supp. at page 284:

> This analysis of Part III of the opinion in United States v. Bass indicates that the Supreme Court did not intend its language therein to substitute for the sort of statutory construction of Section 1202(a) *which has lead* (sic) *this Court to conclude that the possession offense is not limited to possession while the firearm is in the stream of commerce.* (Emphasis added.)

The Court thereupon denied Snell's motion to dismiss the indictment.

In United States v. Oclit, *supra*, the Court held that if the Government could show that a gun was stolen from the mails sometime in 1967, and that defendant,—a previously convicted felon,—possessed such gun any time after 18 U.S.C. App. § 1202(a) became effective, possession of such gun affected commerce and must come within the statute. The Court concluded that certain language in Part III of the *Bass* opinion was in point. "For example", the Supreme Court had said in *Bass*, "a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, *or if the possession affects commerce . . .*" (Emphasis added.) 404 U.S. at 350, 92 S.Ct. at 524. The Court in *Oclit* stated, in a novel rationale:

> Notwithstanding the fact that the Court expressly noted that its list of examples was not meant to be exclusive, the meaning of its phrase "or if the possession affects commerce" is decisive in this case. The two previous "examples" ("at the time of the offense the gun was moving interstate or on an interstate facility") envision that the possession and interstate connection be contemporaneous, i. e., *while* the gun was moving interstate or on an interstate facility, the defendant had possession of it . . . However, the "affecting commerce" language is not so limited. Giving that phrase its logical meaning and content, it seems obvious that a post-June 19, 1968 possession can "affect commerce", even though the interstate nexus took place before that date . . . For example, in this case, if the government can show that the gun was stolen from the mails sometime in September of 1967 (as is alleged in . . . the indictment) and the defendant possessed it any time after June 19, 1968, then it cannot rationally be contested that the possession of such stolen gun affected commerce and therefore must come within the statute. 343 F.Supp. at 448–449.

In view of all of the foregoing, this court finds and concludes that defendant Williams is guilty, as charged, of violation of 18 U.S.C. App. § 1202(a)(1).

The recent case of United States v. Walker, which was handed down by the 7th Circuit, reversed the District Court which held contrary to this decision. The citation is 489 F.2d 1353 and was decided November 28, 1973.

In accordance with the views of this court as set out above, a judgment of guilty will be and is now entered in this cause. Accordingly, the court now finds the defendant Leroy Williams guilty as charged in the indictment herein.